UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                          CRIMINAL ACTION NO. 3:15-CR-00143-CRS

EARL CLAYTON III                                                            DEFENDANT

Memorandum Opinion

I.  Introduction

A federal grand jury indicted Earl Clayton III and his co-defendant, Earl Clayton IV, for conspiracy to "knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of heroin" in violation of Title 21, United States Code, Section 841(a)(1). Indictment 1, ECF No. 14.

Clayton III moved to suppress all statements he made and evidence obtained as a result of custodial interrogations that occurred on November 24, 2015. Clayton III's Mot. Suppress Statements 1, ECF No. 42. The United States responded. United States' Resp. Opp. Mot. Suppress Statements 1, ECF No. 44. Clayton III then moved to suppress all evidence seized as a result of a search and seizure of his vehicle and person that also occurred on November 24, 2015. Clayton III's Mot. Suppress Evidence 1, ECF No. 44. The United States again responded. United States' Resp. Opp. Mot. Suppress Evidence 1, ECF No. 45. Clayton III then jointly replied to the United States' responses to the motions to suppress. Clayton III's Reply 1, ECF No. 74.

The magistrate judge held an evidentiary hearing on Clayton III's suppression motions. Order 2/2/2017 1, ECF No. 62. Clayton III and the United States filed post-hearing briefs. Clayton III's Mem. 1, ECF No. 70; United States' Mem. 1, ECF No. 66. The magistrate judge recommended that Clayton III's motions to suppress be denied. R. & R. 17, ECF No. 75.

1

Clayton III filed objections to the magistrate judge's report and recommendation. Clayton III's Obj. R. & R., ECF No. 76. For the reasons explained below, the Court will overrule Clayton III's objections.

II. Standard of Review

The Court makes a de novo determination of the proposed findings or recommendations to which Clayton III objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

III. Discussion

Clayton III appears to make two principal objections to the magistrate judge's report and recommendation. First, Clayton III objects to the magistrate judge's conclusion that the government had reasonable suspicion, supported by specific and articulable facts, to seize and search him when he drove away from Clayton IV's residence at 5100 Roederer Drive in Louisville, Kentucky. Clayton III's Obj. 28–32, ECF No. 76. Second, Clayton III objects to the magistrate judge's determination that law enforcement gave him the required *Miranda* warnings. *Id.* at 33–34.

    A.    <u>Whether the Government Had Reasonable Suspicion to Seize Clayton III when He Drove Away from Clayton IV's Residence at 5100 Roederer Drive</u>

Turning to Clayton III's first objection to the magistrate judge's report and recommendation, the Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment permits brief investigative stops of a vehicle when a law enforcement officer has "reasonable suspicion of an ongoing crime." *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2009) (citing *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007)).

Reasonable suspicion requires the law enforcement officer to "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v.*

*Cortez*, 449 U.S. 411, 417–18 (1981). This standard takes into account "the totality of the circumstances—the whole picture." *Id*. at 417. A "hunch" does not give rise to reasonable suspicion, but reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence and obviously less than is necessary for probable cause." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (internal citations omitted).

"[N]ervous, evasive behavior" may be one factor in determining whether there is reasonable suspicion. *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006). Likewise, the suspect's criminal history may also be taken into consideration in determining whether there is reasonable suspicion, although criminal history, by itself, does not give rise to reasonable suspicion. *Joshua v. DeWitt*, 341 F.3d 430, 446 (6th Cir. 2003). Determining whether reasonable suspicion exists may also include "the relevant characteristics of a location," although standing alone in a high crime area is not sufficient to create reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Here, Detective McKinney, the arresting officer, testified at the evidentiary hearing on Clayton III's motions to suppress that the Louisville Metro Police Department had conducted a controlled purchase from Clayton IV, Clayton III's son, at 5100 Roederer Drive. Hearing Tr. 3, 7, 11, ECF No. 60. Based mostly on that controlled purchase, the officers obtained a search warrant to search the residence. *Id*. at 4. After receiving the search warrant, law enforcement prepared the S.W.A.T. team to execute the warrant using their matrix standards. *Id*.

Detective McKinney explained that he performed a "spot check" of 5100 Roederer Drive before he met the S.W.A.T. team. *Id*. at 5. He observed a white Monte Carlo parked in the residence's driveway. *Id*. He also noticed Clayton III at the backdoor of the residence. *Id*. Detective McKinney further testified that he knew that Clayton III was Clayton IV's father. *Id*. at

8, 33. He also knew that Clayton III had been involved in other drug cases and had a history of drug dealing. *Id*.

Immediately before executing the warrant, Detective McKinney observed the white Monte Carlo that had been parked in the driveway coming down Roederer Drive, towards the target location. *Id*. at 6. Detective McKinney believed that Clayton III was driving the vehicle and that Clayton III could see that the S.W.A.T. team was about to enter the residence. *Id*. Detective McKinney observed the car stop in the middle of the street and then quickly travel in reverse towards Poplar Level Road, a traffic violation. *Id*. He then radioed officers positioned at the end of the street to stop the white Monte Carlo. *Id*.

Detective McKinney testified that the justification for the stop of the vehicle included:

- his observations of the white Monte Carlo at 5100 Roederer Drive before the search warrant was executed,
- his previous observation that Clayton III had appeared to enter 5100 Roederer Drive,
- the traffic violation involving the white Monte Carlo,
- Clayton III had been mentioned as potentially being involved in the drug case for which the search warrant was obtained, and
- Clayton III had been involved in other drug cases and had a history of drug dealing.

*Id*. at 7–8, 11, 33.

Detective McKinney's observations of the white Monte Carlo at 5100 Roederer Drive, the traffic violation involving the white Monte Carlo, and Clayton III's history of drug dealing, taken together, persuade the Court that Detective McKinney had reasonable suspicion to stop Clayton III for activity related to drugs.

4

Clayton III strongly contends that his abrupt departure from 5100 Roederer Drive was a natural reaction to the presence of a S.W.A.T. team and "was precisely what police intended for and wanted any persons approaching the property during the SWAT operations to do." Clayton III's Obj. 31, ECF No. 76. Clayton's departure consisted of stopping the white Monte Carlo in the middle of Roederer Drive and then quickly traveling in reverse towards Poplar Level Road—an unusual maneuver to say the least—and is simply but one factor giving rise to the reasonable suspicion of activity related to drugs. It must be considered with the other factors indicating criminal activity was afoot. Accordingly, the Court will overrule Clayton III's first objection to the magistrate judge's report and recommendation.

      B.      <u>Whether the Government Gave Clayton III *Miranda* Warnings</u>

In *Miranda v. Arizona*, the Supreme Court held that the government must advise a defendant in custodial interrogation that "he has a right to remain silent, that any statement that he does make may be used as evidence against him, and that he has a right to an attorney, either retained or appointed." 384 U.S. 436, 444 (1966). A defendant may "voluntarily, knowingly, and intelligently" waive these rights. *Id*.

The government bears the burden of establishing by a preponderance of the evidence that the defendant was provided the required *Miranda* warnings and that the defendant knowingly and voluntarily waived his rights to remain silent and his rights to counsel. *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009). To be voluntary, the waiver must be "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000) (internal citations omitted). In determining whether the waiver was knowing, "the relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege,' but

rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking any time.'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Colorado v. Spring*, 479 U.S. 564, 573–74 (1987)). A "waiver may be clearly inferred when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights." *United States v. Nichols*, 512 F.3d 789, 798 (6th Cir. 2008). A waiver of *Miranda* rights does not have to be in writing or be expressly made. *Adams*, 583 F.3d at 467 (citing *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002)).

At the evidentiary hearing, Detective McKinney testified that he observed Clayton III and a woman sitting on a curb after the white Monte Carlo had been stopped at the end of Roederer Drive. Hearing Tr. 9, ECF No. 60. Detective McKinney then read Clayton III his *Miranda* rights and explained to him the situation. *Id*. According to Detective McKinney, Clayton III never indicated that he failed to understand the *Miranda* rights. *Id*.

After returning to 5100 Roederer Drive when the search of the residence had been completed, Detective McKinney began to ask Clayton III questions. *Id*. at 9, 13. Detective McKinney testified that Clayton III was cooperative and answered the questions. *Id*. at 13. Clayton III did not ask to speak to an attorney despite Detective McKinney asking him if he wanted to call an attorney. *Id*. Given that waivers of *Miranda* rights do not need to be in writing or expressly made, *Adams*, 583 F.3d at 467, and given Detective McKinney's testimony, the United States has proven by a preponderance of the evidence that *Miranda* warnings were given to Clayton III before he was interrogated. Thus, the Court will overrule Clayton III's second objection to the magistrate judge's report and recommendation.

IV.  Conclusion

The Court will overrule Clayton III's objections. The Court will adopt the magistrate judge's report and recommendation in its entirety. The Court will deny Clayton III's motion to suppress all statements he made and evidence obtained as a result of custodial interrogations on November 24, 2015. The Court will also deny Clayton III's motion to suppress all evidence seized as a result of a search and seizure of his vehicle and person on November 24, 2015. An order will be entered in accordance with this memorandum opinion.

August 8, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**